**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00847-CV

————————————

ADAN G. ADAME, ROBERT H. ARISPE, HARVEY EDWARD ARNOLD, HERMON HARVEY ARNOLD, LUCIANO BARRIENTEZ, HOMER L. BATCHELOR, TOMAS BENITEZ, DELBERT RAY BLUNDELL, MELVIN BRIONES, TROY BRITT, RAYMOND H. BUTTERFIELD, GUADALUPE CALVO JR., RICHARD F. CAPSON, MERCEDES CASTILLO, IGNACIO CAVAZOS, HECTOR A. CHAPA, HUMBERTO CHAPA, REX CICERO, PALFREY COLLINS, GLENN COURMIER, EDDIE M. CROSS, FRANCISCO DABDUB, CAROL GENE DABNEY, STEVE DAVIS, NOE DE LA CRUZ, JOSE G. DELAPAZ, JOSE DUENES, JESSIE DUNCAN, RUDY ENCINAS, JOSE ESQUIVEL, JOSE T. FAJARDO, BENJAMIN D. FIELDS, FRANK FRANCO, JESUS CANTU GARCIA JR., PABLO G. GARCIA SR., MICHAEL GARY, ALONZO GARZA, HERMILO GARZA SR., HOMERO GARZA, OSCAR GARZA JR., PAUL D. GAWLIK, MANUEL B. GONZALES, BACILIO M. GUZMAN, CHESTER HARRINGTON, NORRIS G. HAWLEY, GERALD HENRY, JOSE A. HERNANDEZ, RIGOBERTO HERNANDEZ, C. DELL HODGE JR., DAVID HOLLINGSWORTH, KENNETH W. HOUFF, ELMER JAMISON, RONNIE L. JOHNSON, CURTIS JONES, JOE KOENIG, ELIAS LEAL, ROBERT LEMOS, JOSE G. LONGORIA, ANTONIO LOPEZ, CELSO

**LOPEZ, ARRON LUKE, GEORGE MCFARLAND, ERNEST MECHELL, ROBERT MECHELL, JOSE MEZA, CLYDE T. MILLER, KEITH MOORE, JUAN MORALES, TOMAS MORIN, ADALBERTO MUNIZ, DANIEL NAVEJAR, ESTEBAN NIETO, DANIEL OCHOA, MARCOS ORTIZ, JIMMY PATTERSON, MANUEL C. PAZ SR., ROBERTO PAZ, JUAN R. PEREZ, OSCAR PEREZ, VICTOR C. PEREZ, CARL PRENTICE, RENE R. RAMIREZ, RAY CHARLES REDMON, BILLY W. RICHARDSON, JOSE RIOS, FLOYD H. RODGERS, JOSE Z. ROJAS, GEORGE SAENZ, HECTOR SALAZAR, GUADALUPE C. SERNA, JESUS SOLIZ, HOWARD LEROY SPEARS, ROGER SPENCER, CARROLL G. STARKS, WILLIAM T. TERRAL, CURTIS THOMAS, MARTIN TORRES, TEODORO TOVAR, JOSE LUIS URESTI, ENRIQUE G. VILLARREAL JR., CLIFTON WEITZEL, ROBERT F. WEITZEL, JOSEPH H. WHEELER, JAY C. WHITLOCK, HERBERT WHITMIRE, AND ABELARDO ZAMBRANO, Appellants**

**V.**

**3M COMPANY F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY; AEARO COMPANY; AIR EQUIPMENT & REPAIR, INC.; AIR LIQUIDE AMERICA L.P.; AIRTROL SUPPLY, INC.; ALAMO CEMENT COMPANY; AMCOL INTERNATIONAL CORPORATION; AMERICAN COLLOID COMPANY; AMERICAN OPTICAL CORPORATION; AMF INCORPORATED & MINSTAR, INC.; ASHLAND CHEMICAL, INC.; BACOU-DALLOZ SAFETY, INC. F/K/A DALLOZ SAFETY, INC. F/K/A WGM SAFETY CORPORATION D/B/A WILLSON SAFETY PRODUCTS; BARRETTS MINERALS INC.; BARRY & BARRY SAND COMPANY, INC.; BLACK & DECKER (U.S.), INC.; BOB SCHMIDT, INC.; BONDO CORPORATION; CEL INDUSTRIES, INC.; CENTRAL READY MIX CONCRETE; CHEVRON U.S.A. INC. F/K/A GULF OIL; CHICAGO PNEUMATIC, INC.; CITGO PETROLEUM CORPORATION; CITGO REFINING AND CHEMICALS COMPANY, L.P.; CLEMCO INDUSTRIES CORPORATION HANSON AGGREGATES LLC SUCCESSOR BY MERGER TO PIONEER INTERNATIONAL (USA), INC. SUCCESSOR BY MERGER TO HANSON AGGREGATES, INC. F/K/A HANSON AGGREGATES CENTRAL, INC. F/K/A PIONEER SOUTH CENTRAL, INC. F/K/A PIONEER CONCRETE OF TEXAS, INC.; CORPUS CHRISTI EQUIPMENT COMPANY; DEVILBISS OR THE DEVILBISS COMPANY (SOMETIMES NAMED AS RANSBURG**

2

CORPORATION, ITW FINISHING LLC OR ILLINOIS TOOL WORKS INC.); E. I. DU PONT DE NEMOURS; E.D. BULLARD COMPANY, INC.; EASTERN SAFETY EQUIPMENT CO., INC.; EL PASO SAND & TRUCKING; EMPIRE ABRASIVE EQUIPMENT COMPANY, L.P.; EMPIRE ABRASIVE EQUIPMENT CORPORATION; ENCON SAFETY PRODUCTS, INC.; ESPEY SILICA SAND COMPANY, INC.; FAIRMOUNT MINERALS, LTD.; FERRO ENGINEERING DIVISION OF ON MARINE SERVICES; FLEX-KLEEN; FLEXO PRODUCTS, INC.; GARDNER DENVER, INC.; GENERAL PATTERN COMPANY (SUCCESSOR-BY-MERGER TO GENERAL FOUNDRY PRODUCTS CORP.); GLENDALE TECHNOLOGIES, INC.; GRANITE CITY TOOLS; HAMILTON SUNDSTRAND; HANSON AGGREGATES WEST, INC.; HEXION INC. F/K/A MOMENTIVE SPECIALTY CHEMICALS F/K/A HEXION SPECIALTY CHEMICALS, INC. AND F/K/A BORDEN CHEMICAL, INC.; HUMBLE SAND & GRAVEL, INC.; IDEAL BASIC INDUSTRIES, INC.; INDUSTRIAL HOLDINGS CORPORATION F/K/A THE CARBORUNDUM COMPANY; INGERSOLL-RAND COMPANY; JOBE CONCRETE PRODUCTS; KELCO SALES & ENGINEERING CO., A DIVISION OF POLLEY, INC.; KEY HOUSTON, A DIVISION OF JACKSONVILLE SHIPYARDS, INC.; KEY HOUSTON, INC., A DIVISION OF JACKSONVILLE SHIPYARDS, INC.; LOCKHEED MARTIN CORPORATION; LOGAN & WHALEY COMPANY; LONE STAR INDUSTRIES, INC.; LOUIS M. GERSON COMPANY, INC.; MARTINDALE ELECTRIC COMPANY; MILTON ROY; MINE SAFETY APPLIANCES; MISSISSIPPI VALLEY SILICA COMPANY, INC.; MOLDEX-METRIC, INC.; NORCROSS; NORTH SAFETY PRODUCTS; OGLEBAY NORTON; P.K. LINDSAY COMPANY; PANGBORN CORPORATION; PARMELEE INDUSTRIES, INC.; PAULI & GRIFFIN COMPANY; PORTER WARNER INDUSTRIES, INC.; PREMIER REFRACTORIES, INC., IMPROPERLY NAMED AND SERVED AS AMERICAN PREMIER, INC. F/K/A PREMIER REFRACTORIES AND CHEMICALS, INC.; PROTECH COATINGS, INC. F/K/A FOUNDRY SPECIALTIES, INC.; PULMOSAN SAFETY EQUIPMENT CORPORATION; QUIKRETE; RACAL HEALTH AND SAFETY, INC.; RUEMELIN IN RECEIVERSHIP; SABINE PROPELLER & MARINE SERVICE COMPANY; SAINT-GOBAIN ABRASIVES, INC., F/K/A NORTON COMPANY; SCHRAMM, INC.; SCOTT TECHNOLOGIES, INC.; SHREVEPORT RUBBER AND GASKET; SIEBE NORTH; SILICA PRODUCTS, INC.; SLY, INC. F/K/A W. W. SLY MANUFACTURING CO.;

**SOUTHERN SILICA OF LOUISIANA, INC.; SPECIALTY MINERALS INC.; SPECIALTY SAND COMPANY; SPENCE CONCRETE COMPANY SULLAIR, LLC; SUNDYNE; SURVIVAIR, A DIVISION OF U.S.D. CORPORATION; SURVIVAIR, INC.; TECHNISAND, INC.; TEXAS GASKET; TEXTRON INC.; THE DOW CHEMICAL COMPANY; THE EASTWOOD GROUP INC. D/B/A THE EASTWOOD COMPANY; THE GOODYEAR RUBBER AND TIRE COMPANY; THE HILL AND GRIFFITH COMPANY; THE MORIE COMPANY; THORSTENBERG MATERIALS CO., INC.; TIDE-AIR; TRIANGLE SUPPLY; TRIPLEX, INC.; TRUMAN'S INC.; TWENTIETH CENTURY FOX FILM CORPORATION; TXI OPERATIONS, LP; TYROLIT NORTH AMERICA INC.; U.S. SILICA COMPANY, FORMERLY KNOWN AS PENNSYLVANIA GLASS SAND CORPORATION AND SUCCESSOR IN INTEREST THOUGH MERGER TO OTTAWA SILICA COMPANY; UNIMIN CORPORATION; UNION CARBIDE CORPORATION; VALERO ENERGY CORPORATION; VALLEN CORPORATION; VESUVIUS USA CORPORATION; VULCAN MATERIALS COMPANY; WEDRON SILICA COMPANY, AN OHIO CORPORATION; WESCO; WESCO REFRACTORIES; AND WHEELER PROTECTIVE APPAREL, INC.,**
**Appellees**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2006-76611**

---

**MEMORANDUM OPINION**

This is an appeal from the dismissal of 106 individual silica products-liability cases. The appellants are sandblasters who allege personal injury from exposure to silica in their workplaces. The appellees are manufacturers, producers, designers, distributors, and sellers of silica-related products. The multidistrict litigation pretrial court sustained objections to the sandblasters' medical reports on various grounds,

4

including the failure to produce documentation required under Civil Practice and Remedies Code Section 90.004(a)(4). As a result of the sandblasters' failure to serve medical records in compliance with Chapter 90 of the Civil Practice and Remedies Code, the trial court dismissed the cases without prejudice, as mandated by Section 90.010(d-1).

On appeal, the sandblasters present various constitutional challenges to the dismissal of their claims pursuant to Chapter 90. However, they have failed to challenge the constitutionality of the medical-record production requirement of Section 90.004(a)(4). Nor have they presented any other argument that it was error to dismiss their claims for failure to satisfy Section 90.004(a)(4). Because the trial court's ruling on this point is sufficient to sustain the dismissal of their claims, the sandblasters' constitutional challenges are waived, and we cannot address their merits. We affirm the judgment of the trial court.

**I**

The sandblasters' individual lawsuits were pending in 2005 when the Legislature enacted Chapter 90 of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE §§ 90.001–.012; Act of May 16, 2005, 79th Leg., R.S., ch. 97, § 1, 2005 Tex. Gen. Laws 169. Pursuant to the statute, the individual cases were transferred to a MDL pretrial court, *see* TEX. CIV. PRAC. & REM. CODE § 90.010, pending the submission of medical reports. *See id.* § 90.004. In 2005, a checklist for

medical reports and documentation was filed in the MDL pretrial court and approved by the trial judge, providing guidance to the sandblasters in satisfying the statutory requirements.

In 2013, the Legislature amended Section 90.010 to mandate dismissal of silica cases that had been on file since before the 2005 enactment of Chapter 90 and in which compliant medical reports had not been submitted.[1] Such dismissals are without prejudice to the right to file a subsequent action seeking damages arising from a silica-related injury, *see id.* § 90.010(*l*), and any such subsequently refiled action is treated for purposes of determining the applicable law as if that claimant's action had never been dismissed. *Id.* § 90.010(n).

In March 2016, the sandblasters submitted medical reports in an attempt to satisfy the requirements of Chapter 90. Appellees filed both general objections and plaintiff-specific objections to the medical reports. They argued, among other grounds, that the reports did not comply with Chapter 90. Among the arguments was

---

[1]     Civil Practice and Remedies Code Section 90.010(d-1) provides:

> Beginning on September 1, 2014, the MDL pretrial court shall dismiss each action for . . . a silica-related injury that was pending on August 31, 2005, unless a report was served on or after September 1, 2013, that complies with Section 90.003, Section 90.004, or Subsection (f). The MDL pretrial court shall provide for the dismissal of such actions in a case management order entered for that purpose. All actions for a silica-related injury shall be dismissed on or before August 31, 2015. . . .

a general objection that the sandblasters failed to produce all the testing documentation required by the statute. Appellees further alleged that the sandblasters destroyed or failed to preserve this evidence. They moved to dismiss the sandblasters' claims.

The sandblasters responded with a challenge to the constitutionality of various parts of Chapter 90 for various reasons. These contentions included arguments that certain provisions are unconstitutionally vague and oppressive, and that they violate the Texas Constitution by applying retroactively.

The MDL pretrial court held hearings on the objections to the medical reports. As to each of the sandblasters, the court overruled one of the general objections relating to the untimeliness of the court's review of the reports, and it expressly sustained "all remaining objections by the Defendants to this Plaintiff's Medical Report," finding that each one failed to comply with Chapter 90. The MDL pretrial court dismissed each sandblaster's silica-related claims, without prejudice, pursuant to Section 90.010(d–1).

The sandblasters appeal.

**II**

Chapter 90 requires claimants asserting silica-related injuries to include specified testing documentation when they serve their medical reports on each

7

defendant.[2] The general objections to these claimants' medical reports alleged that the reports were not accompanied by the necessary testing documentation because they failed to include all "error codes and pulmonary function test data," as required by the statute. Many of the specific objections to the sandblasters' medical reports reiterated this claim. The appellees further alleged spoliation, asserting that the sandblasters had admitted to destroying the testing documentation for almost all of the reports.

---

[2]     Civil Practice and Remedies Code Section 90.004(a)(4) provides:

> A claimant asserting a silica-related injury must serve on each defendant a report by a physician who is board certified in pulmonary medicine, internal medicine, oncology, pathology, or, with respect to a claim for silicosis, occupational medicine and whose license and certification were not on inactive status at the time the report was made that:
>
> . . . .
>
> (4)     is accompanied by copies of all ILO classifications, pulmonary function tests, including printouts of all data, flow volume loops, and other information demonstrating compliance with the equipment, quality, interpretation, and reporting standards set out in this chapter, lung volume tests, diagnostic imaging of the chest, pathology reports, or other testing reviewed by the physician in reaching the physician's conclusions.

The sandblasters did not challenge the constitutionality of this aspect of Chapter 90 in the MDL pretrial court. Nor do they challenge on appeal the dismissal of their claims based on this objection to the adequacy of their medical reports.

Appellees argue that among the numerous legal arguments made in the trial court, the dismissal of the sandblasters' claims was independently justified by the destruction of and failure to produce documentation required by Subsection 90.004(a)(4). They further contend that because appellants have not challenged the constitutionality of 90.004(a)(4), this Court need not address any of the constitutional questions presented on appeal.

To prevail on appeal, an appellant must attack all independent grounds supporting a judgment. *See, e.g.*, *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 83 (Tex. 1977); *City of Deer Park v. State ex rel. Shell Oil Co.*, 275 S.W.2d 77, 84 (Tex. 1954); *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If the appellant fails to do so, the appellate court must "accept the validity of that unchallenged independent ground" and affirm the judgment. *Britton*, 95 S.W.3d at 681–82. Additionally, if a controversy may be resolved on a nonconstitutional ground, then prudence generally requires that the appellate court rest its decision on that ground and refrain from unnecessarily deciding any "ancillary" constitutional questions presented. *VanDevender v. Woods*, 222 S.W.3d 430, 432–33 (Tex. 2007).

Other than refuting a separate and distinct spoliation allegation relating to the testing data underlying their medical reports, the sandblasters never responded to appellees' remaining objections to the reports under Subsection 90.004(a)(4). The sandblasters argue for the first time in their reply brief that, under the terms of the court-approved checklist, they were not obligated to produce documentation related to pulmonary function tests demonstrating compliance with Chapter 90 standards because such documents had not been reviewed by physicians in reaching their conclusions as to each claimant's medical condition. Because the sandblasters' opening brief did not assign error to the ruling sustaining appellees' objections under Section 90.004(a)(4), we conclude that the argument is waived. *See, e.g.*, *N.P. v. Methodist Hosp.*, 190 S.W.3d 217, 225 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived."); *see also* TEX. R. APP. P. 38.1(i).

One other constitutional argument mentioned in appellants' brief requires mention, because if successful it would undermine the application of Chapter 90 in these cases. In their last issue, the appellants assert that the dismissal of their cases would be an "unconstitutional retroactive taking" in violation of Section 16 of the Texas Bill of Rights.[3] We conclude this four-page argument is waived due to

---

[3]   "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16.

inadequate briefing. TEX. R. APP. P. 38.1(i). The brief contains no argument that dismissal of the cases constitutes an unconstitutional taking, but instead suggests unconstitutional retroactivity because the appellants would be prejudiced by the dismissal of their cases, and dismissal purportedly would destroy the "claimed purpose of the law."[4] While inviting us to invalidate a statute as applied to over 100 claimants, the brief entirely fails to engage the complex legal analysis that would be required to determine that the statute is unconstitutionally retroactive, which requires consideration of the dual purposes of the prohibition against retroactivity— protection of "the people's reasonable, settled expectations" and against "abuses of legislative power"—in light of three factors: "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; the nature of the prior right impaired by the statute; and the extent of the impairment." *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 139, 145 (Tex. 2010). Merely asserting that the appellants are prejudiced by the operation of the law and

---

[4] *See* Act of May 16, 2005, 79th Leg., R.S., ch. 97, § 1, 2005 Tex. Gen. Laws 169 ("It is the purpose of this Act to protect the right of people with impairing asbestos-related and silica-related injuries to pursue their claims for compensation in a fair and efficient manner through the Texas court system, while at the same time preventing scarce judicial and litigant resources from being misdirected by claims of individuals who have been exposed to asbestos or silica but have no functional impairment from asbestos-related or silica-related disease.").

contending that the statute has failed to achieve its stated public-policy purpose is inadequate to present this issue for our review.

Because the MDL pretrial court sustained appellees' objections under subsection 90.004(a)(4), and the sandblasters have failed to challenge that ruling on any ground, constitutional or nonconstitutional, we affirm the judgments of the trial court without reaching the constitutional challenges. *See VanDevender*, 222 S.W.3d at 432–33; *Nobility Homes*, 557 S.W.2d at 83.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Caughey.